UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIM R. SCHULER,

      Plaintiff,

 -v-

THE DOW CHEMICAL COMPANY
and ANGUS CHEMICAL COMPANY,

      Defendants.
_____

14-CV-1043-MJR
DECISION AND ORDER

  Pursuant to 28 U.S.C. §636(c), the parties have consented to disposition of this case by a United States Magistrate Judge. (Dkt. No. 31). Presently before the Court is the joint motion for summary judgment filed by defendants the Dow Chemical Company and ANGUS Chemical Company. (Dkt. No. 39). The Court heard oral argument on the motion on December 14, 2017. For the following reasons, the defendants' motion is granted.

## **BACKGROUND**[1]

  At all relevant times, ANGUS Chemical Company, a wholly-owned subsidiary of the Dow Chemical Company, operated a site in Niagara Falls, New York. (Defts. Stmt. ¶3). The Niagara Falls site processed chemicals and tested and packaged a variety of products for use in the research and pharmaceutical industries. (*Id.* ¶4). The site was relatively small — approximately only twelve full-time employees worked there. (*Id.* ¶7).

---

[1]  Taken from the pleadings and motion papers filed in this action, including the defendants' Statement of Undisputed Material Facts ("Defts. Stmt.") (Dkt. No. 39-2). When citing a proposed fact within the defendants' statement, the Court has confirmed that Schuler's responding statement ("Pltf. Stmt.") (Dkt. No. 50-1) either admits the fact or fails to specifically controvert it with evidence. *See* W.D.N.Y. L.R. Civ. P. 56(a).

Plaintiff Kim Schuler was hired as a full-time Administrative Specialist at the Niagara Falls site in October 2008. (Defts. Stmt. Tab B Ex. 4). The defendants do not specify which entity — Dow or ANGUS — actually employed Schuler, so for purposes of the instant motion, the Court will treat both entities as having been her employer.

As an Administrative Specialist, Schuler reported to Mark Deuble, the Niagara Falls site's logistics leader, and John Gabrielson, the facility manager. (Defts. Stmt. ¶¶11, 15). Schuler was responsible for performing a variety of functions at the site, including faxing items, locating batch records, photocopying, scanning, filing, serving as a backup for customer service by answering the phone, serving as a backup for an employee in the warehouse who handled labeling, ordering supplies for the lunchroom and office, monitoring the stock of supplies, conducting on-site safety orientations, tracking the hours of contract employees and contractors who were on-site, distributing the mail on a daily basis, assisting in new employee orientation training and the documentation process, bringing in food for luncheons, and processing production orders. (*Id.* ¶¶19-33). Schuler also performed a role in the site's Environment, Health & Safety Program. (*Id.* ¶46). In order for Schuler to perform many of her job duties, she had to be physically present at work. (*Id.* ¶¶35-40, 132). Only twenty percent of Schuler's duties could be performed from home. (*Id.* ¶132).

In April 2011, Schuler was diagnosed with multiple sclerosis ("MS"). (*Id.* ¶52). Although the defendants' reaction to Schuler's diagnosis was "supportive" (*id.* ¶86), Schuler states that Deuble and Gabrielson "sent [her] home" and placed her on "short-term disability" upon learning of her diagnosis because they were concerned she might pose a safety risk to the site (Pltf. Stmt. Ex. B (Pltf. Dep. Tr.) at 92-100).

Schuler's MS symptoms consisted of "minor flare-up[s]" that lasted a couple days and "exacerbation[s]" that lasted a couple weeks. (*Id.* at 135). The flare-ups and exacerbations occurred without warning. (*Id.*). Schuler endured tremors, crying spells, body pain, foot problems, unsteadiness, and weakness during an exacerbation. (*Id.* at 101-02). When an exacerbation occurred, Schuler could not work and did not know whether she would need to be out of work for a couple days or a couple weeks. (Defts. Stmt. ¶56). Schuler states that she suffered an exacerbation after Deuble and Gabrielson sent her home in April 2011. (Pltf. Stmt. Ex. B (Schuler Dep. Tr.) at 97, 100). She did not return to work from that absence until July 2011. (Defts. Stmt. ¶¶57-58). Schuler had a second exacerbation in the spring of 2012, causing her to miss more work. (*Id.* ¶¶80-81). Schuler had a third exacerbation in the summer of 2013, causing her to be out of work from August 6 until September 9. (*Id.* ¶82). Schuler missed work for other reasons as well, such as vacations and illnesses unrelated to her MS. (Pltf. Stmt. Ex. K). In 2012 and 2013, Schuler was absent from work at least once a month. (Defts. Stmt. ¶83). As of September 13, 2013, Schuler had designated 213 hours of absences in 2013 as being for medical leave. (*Id.* ¶84).

Schuler's work accumulated during her absences and required her to catch up on it when she returned to work. (*Id.* ¶93). Some of the work that accumulated could not wait for Schuler to return, and other employees had to step in to handle the work, sometimes incurring overtime. (*Id.* ¶¶94-95). Schuler's coworkers at the Niagara Falls site were essentially not allowed to take vacations during Schuler's absences. (*Id.* ¶96). Sometimes it was necessary for the site to utilize the services of a contractor to handle some of Schuler's job duties while she was out. (*Id.* ¶97).

Around the time Schuler returned to work from her leave of absence on September 9, 2013, the defendants formed a "Medical Review Board" to review her employment status. (*Id.* ¶103). The Medical Review Board consisted of Dori Ana Peku (HR), Danielle Mehalo (Legal), Eileen Bonner (Medical), Deuble (Leadership), Gabrielson (Leadership), Ernest Green (Leadership), Angelia Wilson (HR), and Mike Dizer (Ethics). (*Id.* ¶104). Based upon Schuler having purportedly exhausted all of her short-term medical leave and the effect Schuler's absences were having on the Niagara Falls site, the Medical Review Board placed Schuler on short-term medical leave, thereby allowing her to receive her salary and benefits until February 2014 and to apply for long-term disability benefits. (*Id.* ¶¶106-07). Under the defendants' short-term medical leave policy, an employee is eligible for six months' paid medical leave. (Defts. Stmt. Tab D (Peku Dep. Tr.) at 75, 87, 91). The Medical Review Board's decision to place Schuler on short-term medical leave is somewhat confusing given that the Board had just concluded that Schuler had already exhausted all of her short-term medical leave.

At a closed-door meeting on September 19, 2013, Deuble, Gabrielson, and Peku (appearing by telephone) informed Schuler that she was being placed on short-term medical leave. (Defts. Stmt. ¶¶109, 111; Pltf. Stmt. Ex. B (Pltf. Dep. Tr.) at 173). Peku informed Schuler that the defendants were "letting [her] go that day" and she had "to get [her] belongings and not come back on the property." (Pltf. Stmt. Ex. B (Pltf. Dep. Tr.) at 173). According to Deuble, "there was not an opportunity [for Schuler] to return to work" after the meeting. (Defts. Stmt. Tab C (Deuble Dep. Tr.) at 172, 183). Soon after Schuler's departure, the defendants posted her position and hired her replacement. (*Id.* at 174).

On September 24, 2013, five days after the closed-door meeting, Peku sent Schuler a letter purporting to "summarize [her] employment status." (Defts. Stmt. Tab B Ex. 20). The letter states, in relevant part:

> Since January 2011, we have, as required under federal laws, juggled schedules and assignments within the workgroup in order to keep your job open should you have been able to return to work in that job on a full time basis before the expiration of your 12 week FMLA leave period. Now that your 12 weeks of FMLA leave has been exhausted, the business has assessed the ability to keep your present job open.
>
> As of September 19, 2013, the business can no longer accommodate your intermittent leaves. Your federal statutory intermittent medical leave for your current medical condition began August 6, 2013. If you are unable to return to work on a full time basis prior to February 7, 2014, which is the expiration of 6 months of leave under the Dow Medical Leave Policy, one of two things will happen:
>
> a.  If you are approved for long-term disability (LTD) benefits by the LTD carrier under the Company's Long Term Disability Plan (LTD Plan), you will then switch to the LTD benefits as summarized in the company's LTD Plan Summary Plan Description and your employment with Dow will end. . . .
>
> b.  If you are not approved for LTD benefits, you will, consistent with company practice, be separated from employment effective February 7, 2014.

(*Id.*).

Peku's letter is confusing in several respects. First, the letter seems to leave open the possibility Schuler could return to work even though Peku informed Schuler a few days earlier to "get [her] belongings and not come back." Second, the letter makes no mention of Schuler having exhausted her short-term medical leave, which was one of the Medical Review Board's purported reasons for terminating her employment. Third, the letter gives Schuler an additional six months of short-term medical leave even though the

Medical Review Board (of which Peku was a member) had just concluded that Schuler had exhausted her short-term medical leave. Fourth, the letter refers to Schuler having exhausted her Family and Medical Leave Act ("FMLA") leave time, but the defendants take the position in this lawsuit that Schuler was not even eligible for FMLA leave.

Peku's letter also references Schuler's ability to apply for long-term disability benefits. On December 16, 2013, Schuler submitted such an application to a third-party insurance provider. (Defts. Stmt. ¶77). When asked why she could not engage in any gainful employment, Schuler stated that her health deteriorated after the defendants placed her on leave in September 2013:

> I have worsened since the end of September. I cannot walk far, have [ ] memory problems, severe depression, numbness, tingling, pain in legs and joints, vertigo, falling, mood swings, anxiety, blurriness, trouble concentrating and staying focused, headaches, unsteady walk, foot turns in, occasional foot drop/drag, weak legs.

(*Id.*). Schuler's application was later denied for insufficient evidence. (Pltf. Stmt. (Pltf. Dep. Tr.) at 175).

Schuler commenced this action in 2014 alleging claims under the FMLA, 29 U.S.C. §2601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, the New York State Human Rights Law ("HRL"), N.Y. Exec. Law §290 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794. (Dkt. No. 1). Contrary to the defendants' argument, the Court reads Schuler's FMLA claim as asserting distinct interference and retaliation claims (*see* Dkt. No. 1 ¶¶38-42), her ADA claim as asserting distinct claims for failure to accommodate and disability discrimination (*see id.* ¶¶63-64), and her HRL claim as asserting distinct claims for failure to accommodate and disability discrimination (*see id.* ¶¶87-90). The defendants move for summary judgment on each claim.

**DISCUSSION**

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has made a properly supported showing of the absence of any genuine issue as to all material facts, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). While "[a]ll reasonable inferences and any ambiguities are drawn in favor of the nonmoving party," *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990), to defeat summary judgment the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

I.   *FMLA Interference Claim*

Schuler alleges that the defendants interfered with her FMLA rights by not fully restoring her to her Administrative Specialist position after she returned to work from her final leave of absence on September 9, 2013 and by preventing her from taking additional leaves of absence under the FMLA due to her termination.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C.

§2615(a)(1). "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). In this case, Schuler cannot satisfy the first element of her claim — that she is an eligible employee under the FMLA.

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). "The term 'eligible employee' means an employee who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period." *Id.* §2611(2)(A). As relevant here, "[t]he term 'eligible employee' does not include . . . any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." *Id.* §2611(2)(B)(ii).

The defendants argue that Schuler is not an eligible employee under the Act because they employed less than fifty employees at and within 75 miles of the Niagara Falls site. (Defts. Stmt. ¶¶7-9). Schuler does not dispute that the defendants employed less than fifty employees at and within 75 miles of the site; she instead argues that the defendants should be equitably estopped from disclaiming her eligibility under the FMLA

because they always treated her as an eligible employee. An employer may be equitably estopped from challenging an employee's eligibility under the FMLA when: "(1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; (2) and the other party reasonably relies upon it; (3) to her detriment." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 724-25 (2d Cir. 2001); *see also Karavish v. Ceridian Corp.*, No. 3:09-cv-935(JCH), 2011 WL 3924182, at *7-8 (D. Conn. Sept. 7, 2011) (finding employer could be equitably estopped from invoking the fifty employee rule to contest plaintiff's FMLA eligibility). "Whether equitable estoppel applies in a given case is ultimately a question of fact," *Kosakow*, 274 F.3d at 725, but equitable estoppel can nonetheless be resolved on summary judgment if "no jury reasonably could find the requisite grounds for invoking" the doctrine, *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 61 (2d Cir. 1986).

Here, Schuler has come forward with evidence supporting the first element of equitable estoppel — namely, that the defendants misrepresented that she was an eligible employee under the FMLA. For example:

- The defendants had Schuler complete "Employee Health Certification Forms" to determine whether she had a serious health condition and was eligible for FMLA leave. (Defts. Stmt. Tab B Exs. 12 & 13).

- The defendants sent e-mails to Schuler confirming that her leave time was covered by the FMLA or counted against her FMLA leave entitlement. (Pltf. Stmt. Ex. A (Pltf. Aff.) ¶12).

- The defendants never advised Schuler that she was not an eligible employee (except in 2012, when she was told she did not satisfy the minimum-hours requirement, *see* 29 U.S.C. §2611(2)(A)(ii)). (Pltf. Stmt. Ex. A (Pltf. Aff.) ¶¶6-9).

- Schuler provided an accounting of her FMLA leave time to the defendants, and the defendants proceeded to "validate[ ]" her leave time. (Pltf. Stmt. Ex. K).

- Peku's September 24, 2013 letter notified Schuler that her "12 weeks of FMLA leave has been exhausted." (Defts. Stmt. Tab B Ex. 20).

Schuler has not, however, come forward with evidence from which a reasonable jury could find detrimental reliance. For there to be detrimental reliance, "the party claiming the estoppel must have relied on [her] adversary's conduct in such a manner as to change [her] position for the worse." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984) (internal quotation marks and citation omitted). *Kosakow* is illustrative. There, the plaintiff alleged that her former employer had violated her FMLA rights by terminating her employment for taking leave for a medical operation, but there was a dispute as to whether the plaintiff had worked 1,250 hours in the twelve months prior to her leave request, which is a precondition to eligibility under the Act. 274 F.3d at 713-14. The plaintiff contended that her employer should be estopped from challenging her eligibility because it had failed to post notices informing employees of the minimum-hours requirement, and if the employer had posted these notices, she would have made sure to work the minimum number of hours prior to taking leave. *Id.* at 723-25. Notably, the plaintiff's medical operation was not an emergency, and it could have been rescheduled after she had met the minimum-hours requirement. *Id.* at 727. Agreeing with the plaintiff, the Second Circuit held that the employer's failure to advise the plaintiff about the minimum-hours requirement could constitute a material misrepresentation, and that the plaintiff might have relied upon that misrepresentation to her detriment by

- 10 -

deciding not to work the extra hours required to make herself an eligible employee under the Act. *Id.* at 725-27.

Here, unlike the plaintiff in *Kosakow*, Schuler did not detrimentally rely on the defendants' misrepresentations regarding her FMLA eligibility because she would have done the exact same thing — taken her final leave of absence in August 2013 — even if the defendants had never incorrectly informed her that she was eligible for FMLA leave. The nature of Schuler's illness was such that she could not work during an exacerbation and had to take leave each time she experienced one, regardless of whether the leave was protected under the FMLA. (Defts. Stmt. ¶56). Because Schuler could not work during an exacerbation, her decision to take her final leave of absence clearly was not contingent on the defendants' misrepresentations regarding her FMLA eligibility. As a result, Schuler did not rely on the defendants' misrepresentations in such a manner as to change her position for the worse. *See Palan v. Inovio Pharm. Inc.*, 653 F. App'x 97, 102-03 (3d Cir. 2016) (finding that plaintiff failed to demonstrate detrimental reliance because "the emergent nature of his health condition did not present him with a choice as to whether to take leave"); *Cowman v. Northland Hearing Ctrs., Inc.*, 628 F. App'x 669, 672 (11th Cir. 2015) (rejecting plaintiff's equitable estoppel argument because "[t]here [was] no indication that [plaintiff's] emergency surgery was contingent upon [the employer's] representation that she was entitled to FMLA leave, or that she changed her position for the worse in light of [the employer's] representation"); *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 557-58 (6th Cir. 2009) (finding plaintiff did not rely on his employer's misrepresentation of FMLA eligibility because there was no evidence indicating that his decision to undergo surgery was contingent on his understanding of his FMLA status).

At oral argument, Schuler's counsel argued that Schuler did in fact change her position for the worse based on the defendants' misrepresentations because had she known her final leave of absence was not protected under the FMLA, she could have pursued some other course of action, such as returning to work before September 9 or applying for long-term disability. Contrary to counsel's argument, there is no evidence in the record indicating what Schuler might have done had she known she was not an eligible employee. Although Schuler submitted an affidavit stating that she believed her final leave of absence was protected under the FMLA (Pltf. Stmt. Ex. A (Pltf. Aff.) ¶32), the affidavit does not state that Schuler would have done anything differently but for her belief her absence was protected. *See Dobrowski*, 571 F.3d at 558 ("At the very least, [plaintiff] could have placed an affidavit in the record stating that he would have forgone the surgery but for his belief that his job status was protected by the FMLA."). Moreover, counsel's contention that Schuler might have taken a shorter leave of absence is foreclosed by Schuler's admission that she simply could not work during an exacerbation. (Defts. Stmt. ¶56). Accordingly, no jury could reasonably conclude that Schuler detrimentally relied on the defendants' misrepresentations regarding her FMLA eligibility. Even if Schuler had known she was not FMLA eligible, she still would have taken her final leave of absence which led to her termination. Therefore, equitable estoppel does not apply here, and the defendants are not foreclosed from challenging Schuler's eligibility under the FMLA. The defendants are thus entitled to summary judgement on Schuler's FMLA interference claim on the ground that Schuler was not an eligible employee under the Act.

## II. *FMLA Retaliation Claim*

Schuler alleges that the defendants terminated her employment in retaliation for taking FMLA leave. The defendants argue that this claim should be analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), while Schuler urges the Court to apply the "negative factor" test adopted by the Ninth Circuit in *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001). Both tests require Schuler to prove that she exercised rights protected under the FMLA. *See Graziadio*, 817 F.3d at 429; *Bachelder*, 259 F.3d at 1125. Schuler cannot make this required showing here because she was not an eligible employee under the Act. Consequently, the defendants are entitled to summary judgment on Schuler's FMLA retaliation claim.

## III. *Failure to Accommodate Claims*

Schuler alleges that the defendants failed to accommodate her disability as required under the ADA and HRL.

"A plaintiff suing under the ADA for disability discrimination bears the burden of establishing a prima facie case." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 183-84 (2d Cir. 2006). "In so-called reasonable accommodation cases . . ., the plaintiff's burden 'requires a showing that (1) plaintiff is a person with a disability . . .; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Id.* at 184 (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)). "A reasonable accommodation claim under the [HRL] is subject to the same standards." *Lewis v. Erie*

*Cty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 352 (W.D.N.Y. 2012). Here, Schuler's reasonable accommodation claims fail because she cannot satisfy the third element — that she could perform the essential functions of her position with or without a reasonable accommodation.

"In evaluating whether a particular job function is 'essential,' [the] Court considers 'the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions.'" *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (quoting *McMillan v. City of N.Y.*, 711 F.3d 120, 126 (2d Cir. 2013)). The Court "must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position, but no one listed factor will be dispositive." *Id.* (internal quotation marks and citations omitted). In addition, "[a]s a general rule, some degree of regular, predictable attendance is fundamental to most jobs, and an employee who cannot get to work does not satisfy the essential requirements of her employment." *Aquinas v. Fed. Express Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996) (internal quotation marks and citation omitted).

The defendants have established that the essential functions of Schuler's Administrative Specialist position included locating batch records at the site, serving as a backup for customer service by answering the phone, ordering supplies for the lunchroom and the office, monitoring the stock of supplies, conducting on-site safety orientations, tracking the hours of contract employees and contractors who were on-site, distributing the mail on a daily basis, assisting in new employee orientation training and the

documentation process, bringing in food for luncheons, and processing production orders. (Defts. Stmt. ¶¶19-33; *see also* Defts. Stmt. Tab B Ex. 7 (written job description listing the essential duties of the Administrative Specialist position)). The vast majority of Schuler's job duties, including those just described, required her to be physically present at the Niagara Falls site. (Defts. Stmt. ¶132). Schuler's disability precluded her from regularly making it into the Niagara Falls site (*id.* ¶¶78-84), and, therefore, she could not perform the essential functions of her position without a reasonable accommodation. Schuler's contention that she capably performed her essential job functions when she returned to work from her final leave of absence on September 9, 2013 overlooks that she had missed several weeks of work in the past (*see id.*) and undoubtedly would have missed additional work in the future due to her chronic illness (*see* Defts. Stmt. Tab B Exs. 12 & 13 (health certification forms from 2012 and 2013 indicating that Schuler would have one to two episodes every two to three months, with each episode lasting two to eight days)).

Schuler argues, however, that a defined leave of absence is a reasonable accommodation that would have allowed her to perform the essential functions of her position. "Whether or not something constitutes a reasonable accommodation is necessarily fact-specific." *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996). "Although reasonableness is normally a question of fact, summary judgment may be granted in cases where, as here, the plaintiff's proposed accommodation 'would eliminate the essential functions of the job.'" *Aquinas*, 940 F. Supp. at 79 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 141-42 (2d Cir. 1995)); *see also Stevens*, 851 F.3d at 230 ("A reasonable accommodation can never involve the elimination of an essential function of a job.") (quoting *Shannon v. N.Y.C. Transit Auth.*,

332 F.3d 95, 100 (2d Cir. 2003)). The defined leave of absence proposed by Schuler would eliminate the essential functions of her position because her physical presence at the Niagara Falls site was required to perform many of these essential functions. Schuler could not perform these essential functions if she was out on leave. Accordingly, Schuler's proposed accommodation is unreasonable as a matter of law. *See Lewis v. N.Y.C. Police Dep't*, 908 F. Supp. 2d 313, 328 (E.D.N.Y. 2012) ("In light of such an extensive record of absences and given the evidence in the record regarding the impact of Plaintiff's absences on her colleagues, the court finds that toleration of Plaintiff's excessive absences is not, as a matter of law, a reasonable accommodation."), *aff'd*, 537 F. App'x 11 (2d Cir. 2013); *Aquinas*, 940 F. Supp. at 79 ("[A] disabled employee who cannot get to work as often as her employer requires is not 'otherwise qualified' for her job . . ., and her employer is not required to make allowances for her absenteeism.").

Moreover, a defined leave of absence is not a reasonable accommodation in this particular case because Schuler's absences were anything but defined. By Schuler's own admission, she did not have any advance warning of an exacerbation (Defts. Stmt. ¶55), and the length of each exacerbation varied (*see* Defts. Stmt. Tab B Exs. 12 & 13). Due to the unpredictable nature of Schuler's illness, there is no telling exactly how much leave time Schuler would have required and when she would have required it. A defined leave of absence thus would not have adequately accommodated Schuler's disability.

Accordingly, the defendants have shown that Schuler could not perform the essential functions of her position with or without a reasonable accommodation, and Schuler has not come forward with evidence from which a reasonable jury could conclude

otherwise.  The defendants are entitled to summary judgment on Schuler's ADA and HRL reasonable accommodation claims.

IV.    *Disability Discrimination Claims*

Schuler also alleges that the defendants terminated her employment because of her disability.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. §12112(a).  "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green* . . . ." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).  Under this analysis, the plaintiff must establish a prima facie case of discrimination, which requires her to show by a preponderance of the evidence that:  "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *McMillan*, 711 F.3d at 125 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  The burden then shifts to the employer to offer a legitimate non-discriminatory reason for the adverse employment action, and if the employer meets its burden, the plaintiff must then demonstrate that the proffered reason is pretextual. *McBride*, 583 F.3d at 96.  The same framework applies to disability discrimination claims brought under the HRL.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000).

The defendants are entitled to summary judgment on Schuler's ADA and HRL disability discrimination claims because, as discussed in connection with Schuler's failure to accommodate claims, Schuler could not perform the essential functions of her Administrative Specialist position with or without a reasonable accommodation.

V.     *Rehabilitation Act Claim*

Schuler has withdrawn her Rehabilitation Act claim.

## **CONCLUSION**

The circumstances surrounding Schuler's illness and her departure from the Niagara Falls site are unfortunate, and it is troubling that the defendants misrepresented that Schuler was eligible for FMLA leave when in fact she was not. Had Schuler been an eligible employee under the FMLA, her leaves of absence likely would have been protected under that statute, and some of her claims might very well have survived summary judgment. That said, the Court is not at liberty to disregard the FMLA's definition of an eligible employee, and as already discussed by the Court, the defendants are not equitably estopped from disclaiming Schuler's eligibility. Accordingly, for the reasons set forth herein, the defendants' joint motion for summary judgment (Dkt. No. 39) is granted as it pertains to Schuler's FMLA, ADA, and HRL claims. Schuler's Rehabilitation Act claim is dismissed as withdrawn.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     January 2, 2018
           Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge